STATE of Missouri, Appellant,

v.

Michele Kay HOYT, Respondent.

No. WD 60239.

Missouri Court of Appeals,
Western District.

May 28, 2002.

David A. Baird, Pros. Atty., Nodaway County, Maryville, for Appellant.

Timothy D. Ernst, St. Joseph, for Respondent.

Before LOWENSTEIN, P.J., NEWTON and HOLLIGER, JJ.

HAROLD L. LOWENSTEIN, Judge.

**Factual and Procedural History**

This is an appeal taken by the State, under § 547.200, RSMo 2000, from a judgment suppressing the evidence seized from the respondent, a passenger in a motor vehicle, following a valid stop.

On the morning of February 2, 2001, Maryville police officer Darrell Shanks was on patrol when he observed a vehicle in which three individuals, including respondent, Michelle Hoyt, were riding. Upon passing Shanks' patrol car, the individuals in the vehicle all physically turned around and stared at Shanks, prompting him to radio dispatch and run the vehicle's plates. Shanks received a radio transmission back indicating the vehicle had expired plates. Shanks was unable to stop the vehicle, however, because he was called to assist in another matter.

Later that same day, Shanks was called to the local Wal-Mart store by an off-duty police officer, Casey Ballantyne, who indicated he had observed an individual, Hoyt, purchasing items in the store that could be used in the manufacture of methamphetamine. Ballantyne waited in the parking lot and watched her leave the store and get into the vehicle in question. Ballantyne then observed a second individual leave the store and get into the vehicle. Ballantyne called dispatch and asked that an officer be sent for assistance. Shanks arrived shortly thereafter, and while the two officers were talking, Hoyt exited the store and got into the vehicle where the two other individuals had been waiting. Ballantyne pointed out the vehicle to Shanks, who indicated that he had been looking for the same vehicle based upon an the report he received that morning. Shanks pursued the vehicle out of the Wal-Mart parking lot and stopped it in another nearby parking lot. Shanks approached the vehicle and asked the driver for a driver's license and for proof of insurance. The driver was unable to produce proof of insurance and was arrested and taken into custody for failure to have proof of financial responsibility.

Based upon the driver's arrest, and in accordance with the police department's

policy, an inventory of the vehicle was conducted and items were seized. Both marijuana and a substance that appeared to be methamphetamine were found in a hidden compartment in the vehicle. Several packages of cold remedy pills containing ephedrine were found in the back seat. Also during the search, the other passenger was placed under arrest for possession of marijuana and possession of an open container of alcohol. In addition, two empty lithium battery packages were found in Hoyt's purse. Hoyt was arrested and subsequently charged with the class C felony of possession of a chemical with the intent to create a controlled substance, § 195.420, RSMo 2000.[1]

Hoyt later filed a motion to suppress evidence discovered during the search of the vehicle, Hoyt herself, her belongings, and statements she made during the search. The trial court sustained the motion to suppress. The court found in its order that Shanks had probable cause to stop the vehicle in which Hoyt was riding based upon the report of expired plates he had received that morning. The trial court also found, however, that Shanks failed to make any type of investigation of the alleged violation because he neither physically checked the plates nor asked for a copy of the car's current registration from the driver. Thus, the trial court concluded that although additional unlawful activity was found, it was not found during the time as reasonably necessary to effectuate the initial purpose of the stop—expired license plates. As such, the trial court determined that the traffic stop lost its lawful character, which would have justified the subsequent investigation, search and seizure. The trial court ultimately sustained the defendant's motion to suppress evidence. This appeal follows.

## Standard of Review

 This court's review of the trial court's decision concerning a motion to suppress evidence "is limited to a determination of whether there is substantial evidence to support its decision." *State v. Tackett,* 12 S.W.3d 332, 336 (Mo.App.2000). The trial court's ruling on a motion to suppress will be reversed only if it is clearly erroneous. *Id.* The trial court's ruling is clearly erroneous if this court is left with a definite and firm belief a mistake has been made. *Id.* This court reviews the trial court's decision viewing the facts and reasonable inferences therefrom in the light most favorable to the trial court's order with the freedom to disregard contrary evidence and inferences. *State v. Monath,* 42 S.W.3d 644, 648 (Mo.App. 2001). While this court gives deference to the trial court's factual findings and credibility determinations, questions of law are reviewed *de novo. State v. Weddle,* 18 S.W.3d 389, 391 (Mo.App.2000). Whether the Fourth Amendment has been violated is a legal question which this court reviews *de novo. Tackett,* 12 S.W.3d at 326.

## I.

 The State argues in its sole point on appeal that the trial court erred in sustaining Hoyt's motion to suppress because the evidence seized was obtained during a lawful search in that it occurred within the initial period of lawful detention and/or the period of lawful detention as extended by the discovery of proof of the commission of another crime.

 The parties do not contest the trial court's finding that Shanks was legally justified in stopping the vehicle in which Hoyt was a passenger. A routine traffic stop based upon the violation of state traffic laws is a justifiable basis for an investi-

---

1. All statutory references are to RSMo 2000, unless otherwise indicated.

gatory stop. *State v. Woolfolk*, 3 S.W.3d 823, 829 (Mo.App.1999). Shanks' intent or motive in stopping the vehicle is unimportant as long as his actions were lawful. *State v. Slavin*, 944 S.W.2d 314, 317 (Mo. App.1997). "So long as the police are doing no more than they are legally permitted and objectively authorized to do, [the resulting stop or] arrest is constitutional." *Id.* Thus, as the trial court found, the investigatory stop of the vehicle was valid.

■■■ The issue in this case is whether the search and seizure of evidence occurred within the period of detention authorized by law. During a traffic stop, an officer may detain the vehicle for the time necessary to conduct a reasonable investigation of the traffic violation. *Woolfolk*, 3 S.W.3d at 828. A reasonable investigation may include requesting the driver to sit in the patrol car, questioning the driver about his destination, and obtaining the driver's license, registration and insurance information. *Slavin*, 944 S.W.2d at 318. Once the investigation has concluded, the detainee must be allowed to proceed unless specific, articulable facts create an objectively reasonable suspicion that the individual is involved in criminal activity. *Id.* This suspicion must come about during the time necessary to effect the purpose of the stop. *Woolfolk*, 3 S.W.3d at 828–29.

As noted *supra*, before Shanks stopped the vehicle, he knew from an earlier dispatch that the license plate on the vehicle was expired. He also called dispatch a second time to confirm the expiration of the plates. Thus, there was no question that the initial stop was lawful. Further, Shanks knew from off-duty officer Ballantyne that the individuals in the vehicle may have purchased ingredients used to manufacture methamphetamine.

■■■ After the stop, Shanks immediately asked the driver for his driver's license and proof of insurance. Both inquiries are considered part of a reasonable investigation during a traffic stop. *Slavin*, 944 S.W.2d at 318. The fact that the driver of the vehicle did not have proof of insurance provided Shanks with a reason to arrest the driver and perform an inventory of the vehicle. The lawful character for detention and therefore seizure may be extended if a new factual predicate for reasonable suspicion is found. *State v. Logan*, 914 S.W.2d 806, 808 (Mo.App.1995) (conviction upheld where officer pulled defendant over for weaving in traffic and then searched car after new basis arose because driver acted nervous, passengers told inconsistent stories about ownership of the vehicle, etc.). *See also State v. Bunts*, 867 S.W.2d 277, 280 (Mo.App.1993) (continued detention and search were appropriate where during investigation, defendant was very nervous, shaking, moving in his seat, and his voice was cracking). In this case, the failure to provide proof of insurance was a new factual predicate upon which the officer could further detain the appellant and search the vehicle.

■■■ "[P]olice may inventory property in their possession when they do so in accordance with standard operating procedures." *State v. Meza*, 941 S.W.2d 779, 781 (Mo.App.1997). During Shanks' inventory of the vehicle, he found marijuana and a substance that appeared to be methamphetamine in a hidden compartment in the vehicle. Shanks also knew from Officer Ballantyne that one of the individuals in the car had purchased cold medicine containing ephedrine. Finding the drugs in the hidden compartment, along with Ballantyne's observations, gave Shanks probable cause to believe that the individuals in the car were involved in criminal activity. *State v. Solt*, 48 S.W.3d 677, 681 (Mo.App. 2001). Thus, the search of the vehicle and the search of the individuals and their belongings were valid. Although Shanks did not follow through with the investiga-

tion of the expired tags on the vehicle, the arrest of the driver of the vehicle for lack of insurance that prompted the inventory of the car was based on a reasonable investigation. The subsequent search of the respondent, a passenger, was a valid search. The legal conclusion of the trial court in suppressing the fruits of the search into Hoyt's purse was in error.

The conclusion that the detention extended beyond the time reasonably necessary to effectuate the initial purpose of the lawful stop was not correct.

The rationale of *Slavin* has not been violated under these facts. The detention of the driver and Hoyt did not extend beyond a reasonable period of time, and was based on specific, articulable facts creating an objective, reasonable suspicion of criminal activity.

The judgment of the trial court sustaining Hoyt's motion to suppress is reversed.

All concur.